IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KENDALYNN JACKSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|  v. ) | Case No. 17-3106 |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| COMMERCE & ECONOMIC ) | |
| OPPORTUNITY, VICTOR NARUSIS ) | |
| and BEN DENNEY, ) | |
| ) | |
|     Defendants. ) | |

<u>OPINION</u>

RICHARD MILLS, United States District Judge:

The Defendants seek summary judgment.

Plaintiff Kendalynn Jackson filed a civil rights Complaint under 42 U.S.C. § 1983, alleging Defendants Victor Narusis and Ben Denney discriminated against her based on her <u>gender</u> in violation of the Equal Protection Clause of the Fourteenth Amendment (Count I).

Jackson also alleges Narusis and Denney have discriminated against her on the basis of her <u>race</u> in violation of the Equal Protection Clause of the Fourteenth Amendment (Count II).

Jackson also alleges that Defendant Illinois Department of Commerce & Economic Opportunity ("DCEO") and the individual Defendants violated her rights under the anti-retaliation provisions of the State Officials and Employees Ethics Act, 5 ILCS 430/15 (the "Ethics Act") (Count III).

## I.     FACTUAL BACKGROUND

### (A)

From September 2014 to May 2017, Jackson was employed by DCEO, and since May 2017 has been employed by the Illinois Department of Transportation ("IDOT") as a Technical Manager IV.

From May 2015 through March 2019, Defendant Victor Narusis was employed by DCEO as the Deputy Director for the Office of Business Development ("Business Development"), which oversees economic development incentive programs.   As the Deputy Director, Defendant Narusis managed the program managers and their teams and also assisted program users.

Defendant Ben Denney was employed by DCEO from December 2004 to early 2019.   Initially, he worked in Business Development as a marketing representative.  In August 2016, Defendant Denney was promoted to be the Assistant Deputy Director of Business Development and served in that position until he left DCEO.  As Assistant Deputy Director, he oversaw program managers and any staff subordinate to the managers.

Jackson initially reported to Narusis as her direct supervisor. She then reported directly to Denney after he was promoted in August 2016.

The Defendants allege Business Development oversees several tax incentive programs: EDGE; Enterprise Zone; ETIP; Rivers EDGE Redevelopment and High Impact Business ("HIB"). Jackson states that Business Development also dealt with Tax Increment Financing ("TIF"). Jackson was responsible for dealing with TIF.

The Defendants allege the EDGE program was the most active, receiving 20 to 80 applications and processing 250 to 300 tax certificates each year. The Enterprise Zone program typically received five to 15 applications and processed 50 to 75 tax certificates each year. Jackson disputes the statement in part, claiming that the Enterprise Zone program received approximately 67 applications in 2015, 40 applications in 2016 and 30 applications in 2017.

Rivers EDGE was limited to five communities in Illinois. HIB typically received less than one application each year. A subset of that program, HIB Wind, received about two to five applications each year. The ETIP program did not have funding during the vast majority of Narusis's employment with DCEO.

Jackson was the program manager for Enterprise Zone, Rivers EDGE, HIB and HIB Wind. During the relevant time period, John Glazier was the program manager for ETIP. Matt Jennings was the program manager for the EDGE program.

Business Development also included a business financial division managed by Mark Gauss.

During the relevant time period, DCEO was under a hiring freeze and utilized temporary workers to fill a full-time position that supported Jackson's position. Jackson notes that although there was a freeze in place, DCEO still hired employees. After Jackson left DCEO, Business Development lost the temporary workers as well because Human Resources did not want to create union issues by using workers to fill a union position. The Defendants did not have any involvement in issuing bonuses or salary increases.

(B)

The Plaintiff notes that at DCEO, there are rules that govern performance evaluations for employees. Evaluations are intended to evaluate an employee based upon objectives that are provided to an employee at the beginning of the evaluation period. Under Illinois law, evaluations are used to determine eligibility for promotion.

In September 2016, Defendant Narusis completed three performance evaluations for Jackson that covered the following time periods: a first probationary evaluation for September 16, 2014 through November 15, 2014; a final probationary evaluation for September 16, 2014, through December 31, 2014 and an annual evaluation for September 16, 2014 through August 31, 2015 ("2015 evaluation").

The evaluations were considered delinquent because they had not been timely completed after the time periods in question had passed. Narusis was not Jackson's supervisor during the time period covered by her probationary evaluations. By the time Jackson's 2015 evaluation was due, Narusis was Jackson's supervisor but had served in that role only since May 2015. (Narusis had either not supervised Jackson during the relevant time periods or had not supervised her long enough to become familiar with her work to complete the evaluations.)

In consultation with Human Resources, Narusis rated Jackson as "Met" or "Acceptable" in all categories for all three delinquent evaluations. Similarly, in consultation with Human Resources, Narusis also rated the other Business Development employees as "Met" or "Acceptable" in all categories for all their delinquent evaluations. Jackson disputed the ratings and challenged her three evaluations as untimely. Her grievance was initially submitted on September 29, 2016. In her objection, Jackson stated the evaluations were untimely, not accurate and created objectives that were unrealistic and that Narusis had not worked with her to establish. (Defendant Denney did not sign Jackson's first three evaluations and did not participate in that evaluation process.)

The Defendants allege Part VII of the 2015 evaluation included 16 objectives for the next year taken from Jackson's job description. Jackson disputes this statement on the basis that she received these "objectives for next year" when she

received her performance evaluation in September of 2016. Less than one month later, Jackson received her evaluation for the time period of September 1, 2015 through August 31, 2016. Accordingly, the objectives were developed at the end of evaluation period in violation of State of Illinois policy.

In October of 2016, Narusis completed Jackson's annual evaluation for the time period covering September 1, 2015 through August 31, 2016 ("2016 evaluation"). In Part II, which was the appraisal of the 16 objectives from Part VII of the 2015 evaluation, Narusis rated Jackson as "Unacceptable" for eight objectives and "Acceptable" for five objectives. He provided only comments for the remaining objectives without specifying a rating. In Part III, the appraisal of Plaintiff's performance characteristics, Narusis rated Jackson as "Unacceptable" for eight out of nine characteristics—Planning, Initiative, Quality, Knowledge, Judgment, Teamwork, Leadership and Human Relations. Narusis rated Jackson as "Acceptable" for Productivity. Jackson alleges her October 2016 evaluation was premised upon performance objectives that had not been given to her during the period of the evaluation. The Defendants claim, however, that Jackson knew what was expected of her in terms of performance.

The Defendants allege the mere fact that Jackson was not completing tasks did not result in "Unacceptable" ratings. Narusis compiled documentation to support the ratings in the second annual evaluation, including emails and examples of

Jackson's work.  Jackson disputes the contention that she was unacceptable in any category.

The Defendants allege Narusis began discussing Jackson's demeanor with her in 2015 in a meeting with Human Resources.  Narusis had begun documenting Jackson's performance at the direction of Human Resources, the Director's Office and the General Counsel.  The Defendants received multiple complaints from Jackson's coworkers about their safety and multiple statements from coworkers that showed an ongoing pattern of issues with professionalism and courtesy.  Jackson disputes these statements.

The Defendants allege the head of DCEO IT expressly asked that Jackson no longer be involved with a Business Development project IT was running because of her demeanor.  Narusis then met with Jackson to discuss IT's concerns.  Jackson disputes these allegations.

The Director's Office and General Counsel informed Narusis that she was not permitted to speak directly with other DCEO employees and outside individuals because of the way in which she interacted with people.  Jackson disputes that she had difficulties interacting with individuals outside of the agency.

Before finalizing the evaluation, Narusis worked closely with Human Resources to review the objectives.  Although Narusis believed Jackson worked very hard, she countered those efforts with her challenging managerial style.  Jackson

claims that the suggestion she had a poor management style is made up by Narusis and Denney.  The evaluation contained comments by Narusis explaining the reasons for each rating.  Generally, it noted Jackson's inability to work with others, provide timely, complete and accurate information to others and display the knowledge and judgment expected of someone who had held the position for nearly two years. Jackson claims she has thoroughly disputed each of those negative statements.  The evaluation also set forth objectives for Jackson for the next year in Part VII. Defendant Denney did not sign this evaluation and did not participate in the evaluation process.  Jackson disputed the content of the 2016 evaluation.

In 2016, Narusis and Human Resources met with Jackson to discuss her goals and objectives for the next year.  The Human Resources representative ended the meeting early because she believed the meeting was not productive.  Jackson agrees these meetings occurred and she documented what happened.  When Jackson attempted to speak in the meeting with HR and Narusis, she was not allowed to comment.

On January 31, 2017, the Defendants sent Jackson a list of revised objectives for the period of January 30, 2017 through August 31, 2017, in preparation for a meeting to discuss those objectives.  Jackson was offered the chance to respond in writing before the meeting.  The objectives the Defendants drafted were similar to the objectives in Jackson's evaluation.

The Defendants allege that on February 2, 2017, Narusis and Denney met with Jackson to review the revised objectives but Jackson could not provide specific recommendations for changes that she wanted.  Jackson disputes this assertion and claims she provided detailed disagreements.

(C)

The Plaintiff received a seven-day suspension, effective November 17, 2016 through November 25, 2016, for two incidents regarding her conduct with customers and supervisors.  Jackson disputes that she acted unprofessionally with her supervisors or with anyone else.  The first incident occurred on October 13, 2016, and involved a phone call with Mark Rothart, an enterprise zone administrator.  The Defendants allege that during the call, Jackson raised her voice at Rothart and was rude, unprofessional and abusive.  Denney stepped in to diffuse the situation and took over the call.  Jackson disputes these statements and that this incident occurred the way that Denney and Narusis suggest that it did.  Denney later received an email from Rothart explaining what had occurred during the call with Jackson.

The Defendants allege the second incident involved Jackson's reaction over an internal memo she had originally written regarding a 2017 enterprise zone for Bloomington-Normal.  Jackson disputes the suggestion that there was any type of an "incident" that was problematic in any way.  She simply objected because a document was sent out suggesting her authorship without her approval.

General Counsel Justin Heather reviewed various memos and other documents submitted by all program managers.  He also reviewed all Enterprise Zone designations and certificates and all EDGE agreements and annual tax certificates before any certificates were sent to the DCEO Director for his signature. Heather asked Denney to send documentation for the Bloomington-Normal Enterprise Zone because the Director's Office wanted the certificate signed with urgency.  Documentation for Enterprise Zones typically consisted of a certificate to be signed by the Director, along with an in-house memo from the program manager to the Director explaining what the certificate covered.  Denney sent Heather the memo Jackson had drafted and the certificate.  Jackson disputes the allegation to the extent it relates to her authorship of the document.

The Defendants allege that when reviewing Jackson's Bloomington-Normal memo, Heather revised Jackson's statement of the law because of recent statutory amendments and made several stylistic changes and grammatical edits.  The incorrect statement of the law was not held against Jackson because it was a unique piece of legislation and an obscure reference to a specific enterprise zone.   Jackson does not dispute that Heather reviews these documents.  The disputes that she has relates to her authorship of the documents.  The final Bloomington-Normal memo sent to the Director still had Jackson's name on it.  On September 30, 2016, the Director signed the certificate.

10

When Jackson discovered the documents had been altered before they were sent to the Director, she became upset and requested that her name be removed from that memo.  The Defendants allege Jackson confronted Denney multiple times about the changes to the memo, stating the memo had her name on it and she did not approve the changes.   Jackson was agitated, yelling and aggressive during the encounters.  Denney explained that Heather had made the changes.  Jackson disputes these statements.

The Defendants allege that because of her conduct on the phone with Rothart and in person with Denney, Jackson was suspended for seven days.  Jackson disputes the suggestion that she engaged in any misconduct.  The Director's Office initially suggested a 30-day suspension.  However, after discussions between the Director's Office, Human Resources and Narusis, Jackson was issued a 7-day suspension.  Jackson states that Narusis suggested a 7-day suspension and issued the 7-day suspension.  The Defendants claim Narusis did not have a recommendation or the final say on the amount or type of discipline Jackson received.   Jackson states Narusis did make the recommendation on November 15, 2016.  Jackson served a seven-day suspension without pay from November 17, 2016, through November 26, 2016.

The Defendants claim Narusis noticed improvement in Jackson's conduct after she served her suspension.  Jackson disputes the statement on the basis that there were no deficiencies in her conduct before she was suspended.

## II. DISCUSSION

The Defendants allege Jackson cannot make out a *prima facie* case of equal protection discrimination under § 1983.  Defendant Denney is entitled to summary judgment for lack of personal involvement.  Moreover, the Defendants claim Jackson was not meeting her employer's legitimate expectations and her performance evaluations do not constitute adverse actions.  The Defendants further contend that Jackson cannot show that similarly situated employees were treated more favorably.

The Defendants also allege that summary judgment is warranted because they have legitimate nondiscriminatory reasons for their actions and Jackson cannot establish any discriminatory pretext behind those actions.

The Defendants allege that Jackson cannot prove she was subjected to a hostile work environment.  They claim Jackson has not established damages.  Moreover, the Defendants assert they are entitled to qualified immunity.

Jackson alleges a jury could properly conclude that she was subjected to gender and race discrimination by Narusis and Denney, thereby precluding summary judgment.  Under § 1983, moreover, Jackson need not establish the "adverse

employment action" standard that is necessary for liability under Title VII.  Jackson contends that when all of the evidence is considered, a reasonable jury could conclude that discrimination occurred.  Additionally, neither Defendant is entitled to qualified immunity because it has been clear that an employee cannot be discriminated against on the basis of either race or gender.  Finally, Jackson alleges she has sustained damages.

Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The Court views the evidence and construes all reasonable inferences in favor of the non-movant.  *See Driveline Systems, LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019).  To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."  *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).   "The court does not assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence."  *Driveline Systems*, 36 F.3d at 579 (internal quotation marks omitted).  Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor.  *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Equal protection claims

A plaintiff's § 1983 Fourteenth Amendment equal protection claim is evaluated using the same standard as is used in considering Title VII claims. *See Silva v. Washington*, 917 F.3d 546, 559 (7th Cir. 2019). Under Title VII, it is unlawful to "discriminate against any individual . . . because of such individual's race . . . [or] sex." "The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014). An individual who is unconstitutionally discriminated against can seek relief from her employer under 42 U.S.C. § 1983. *Id*. at 575 n.3; *See Lauderdale v. Illinois Dep't of Human Servs.*, 876 F.3d 904, 910 (7th Cir. 2017).

A plaintiff need not rely on the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in alleging discrimination under Title VII or § 1983. *Purtue v. Wisc. Dep't of Corr.*, 963 F.3d 598, 601 (7th Cir. 2020). That is simply one way to seek to create a genuine issue of material fact. *See id*. at 602. "Discrimination claims may survive summary judgment when a plaintiff presents evidence that permits a reasonable factfinder to conclude that the employer took an adverse action against the employee because of the employee's race" or sex. *De Lima Silva v. Wisc. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019). The Seventh Circuit explained:

Evidence must be considered as a whole, rather than asking whether
any particular piece of evidence proves the case by itself—or whether just
the "direct" evidence does so, or the "indirect" evidence. Evidence is
evidence. Relevant evidence must be considered and irrelevant evidence
disregarded, but no evidence should be treated differently from other
evidence because it can be labeled "direct" or "indirect."
*Ortiz v. Werner Enterprises, Inc*., 834 F.3d 760, 765 (7th Cir. 2016).

A plaintiff may have "direct or circumstantial evidence that supports an
inference of intentional discrimination" that would not fit in to the *McDonnell
Douglas* framework. *Purtue*, 963 F.3d at 602. Plaintiffs often rely on "ambiguous
or suggestive comments or conduct; better treatment of people similarly situated but
for the protected characteristic; and dishonest employer justifications for disparate
treatment." *Id*.

The Defendants first allege that while Jackson is a member of a protected
class, she cannot satisfy all of the required elements of a prima facie case. Jackson
states that she is not proceeding under the *McDonnell Douglas* burden-shifting
method. Accordingly, Jackson need not meet each of those elements.

The Defendants assert Jackson was not meeting her employer's legitimate
expectations and her performance evaluations do not constitute adverse employment
actions. Jackson contends the Defendants are conflating the "adverse employment
action" standard of Title VII with a claim under 42 U.S.C. § 1983. Jackson notes
that her complaint identifies the following alleged acts of discrimination: (1) the
creation of a hostile work environment; (2) fabricating three performance

evaluations; (3) suspending her for a period of seven days in November of 2016; and (4) fabrication of a performance evaluation on October 4, 2016.

Jackson points out that a § 1983 claim does not always require an adverse employment action in the same sense as other anti-discrimination statutes. *See Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011). The Seventh Circuit has described an adverse employment action under § 1983 as of the type "that the action of which the employee is complaining must be sufficiently adverse to deter the exercise of the individual's right to free speech." *Id*. The analysis in *Hutchins* concerned First Amendment retaliation. *See id*.; *see also Power v. Summers*, 226 F.3d 815, 820 (7th Cir. 2000) (noting that an adverse employment action is not required in order for plaintiff to assert a viable § 1983 First Amendment retaliation claim). However, a § 1983 claim based on discrimination in violation of the Equal Protection Clause does require a "materially adverse employment action." *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013).

Jackson alleges that the first three evaluations are not intended to stand on their own as discrete acts of discrimination. However, the October 14, 2016 evaluation is its own act of discrimination because an evaluation of that nature can be used for promotion.

Jackson further asserts there were problems with the three evaluations.  They were provided to her in a tardy fashion by an individual who did not understand her work.  The evaluation covering September 1, 2015 to August 31, 2016 included performance objectives for that time period that had already passed.  Jackson was evaluated based on objectives that had not been given to her before the evaluation period.  Jackson contends there cannot be a meaningful evaluation when an employee is given no notice of its grounds.

When viewed in a light most favorable to the Plaintiff, the record does show that the evaluations were untimely and thus included objectives that would have been impossible to meet.  To the extent Jackson is relying on these evaluations in support of her race and gender discrimination claims, however, the Court concludes that her claims fail.  Negative performance evaluations do not alone constitute adverse employment actions.  *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006).

Jackson next points to her seven-day suspension from employment which Defendants allege was due to two incidents regarding her conduct with customers and supervisors.  According to DCEO's Predisciplinary Notice, on October 13, 2016, Ben Denney heard Jackson on the phone speaking in a "discourteous and unprofessional manner" to Department customer Mark Rothart, an enterprise zone administrator.  The Notice also claims Jackson "acted in a discourteous and

unprofessional manner when discussing an agency memo with her supervisor" Denney.  Jackson disputes that she acted unprofessionally with her supervisors or with anyone else.

Jackson relies on her affidavit in disputing the Defendants' reasons for the suspension.  However, her own opinion regarding whether the suspension was warranted is irrelevant.  *See Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1056 (7th Cir. 2006) (noting that employee's own opinion she was doing a good job is "beside the point").  While an employee's assertions might establish a factual dispute on certain points, the critical inquiry is "not whether the criticisms of his performance were right or wrong but whether his supervisor honestly believed them." *Id*.  Here, Denney heard Jackson on the phone with Rothart and believed she was being "rude, unprofessional and abusive."  Denney testified he also received an email from Rothart about the phone call.  Accordingly, the record establishes he had an honest belief Jackson was rude and unprofessional.

The second alleged incident concerns Jackson's reaction over an internal memo she had originally written regarding a 2017 enterprise zone for Bloomington-Normal.  Justin Heather made various substantive and stylistic changes to Jackson's memo.  On September 30, 2016, the Director signed the certificate documenting the enterprise zone.  Jackson acknowledges that upon discovering the documents were altered, she became upset and requested her name be removed from the memo.

Denney claims Jackson was "agitated, yelling and aggressive during these encounters," an assertion she disputes. Jackson states she expressed her concerns to Denney but those concerns were ignored. It appears Denney and Jackson had different perceptions of their encounters after Jackson discovered the documents had been altered. There is nothing to suggest Denney did not honestly believe that Jackson was being unprofessional when she expressed her concerns regarding the changes made to her memo.

The November 15, 2016 memo from Vic Narusis provides that after a pre-disciplinary meeting and upon considering Jackson's written response, Jackson would be suspended for seven days. Denney was not involved in the decision about the amount or type of discipline. As with Denney, there is no basis to doubt that Narusis's honest belief is reflected in the memo recommending suspension. The record shows the decision was based on the information presented to Narusis.

The record does not contain any evidence that race or gender discrimination played any role in Jackson's suspension. There is no evidence that Defendants lied about the reason for the suspension. The explanation offered for the suspension was consistent. At most, the Parties had different interpretations of the same events. Denney had an honest belief Jackson was unprofessional on both occasions. While Jackson disputes the statements of Denney and Narusis, that does not create a genuine issue of material fact according to *Luks*.

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment on Jackson's gender and race discrimination claims.

Other claims

In her Complaint, the Plaintiff alleges she was subject to a "hostile work environment."  In order to survive summary judgment on a hostile work environment claim, a plaintiff must demonstrate "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability."  *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

Jackson's response to the Defendants' summary judgment motion does not address a hostile work environment claim.  Therefore, it appears any hostile work environment claims have been abandoned.  To the extent Jackson continues to assert a hostile work environment claim, the Court finds that the record in this case does not contain any evidence of the type of severe or pervasive harassment that is required to maintain a hostile work environment claim.

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment on the federal claims asserted in Counts I and II.

In Count III, the Plaintiff asserts an Illinois Ethics Act claim as to DCEO, Narusis and Denney.  Because all of the federal claims are being dismissed, the Court will decline to exercise supplemental jurisdiction as to the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3).

Ergo, the Motion for Summary Judgment of Defendants Victor Narusis and Ben Denney [d/e 20] is GRANTED.

Counts I and II are Dismissed with prejudice.

Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction as to the remaining state law claim.

Count III is Dismissed without prejudice.

The Clerk will enter Judgment and terminate this case.

ENTER: January 7, 2021

FOR THE COURT:

/s/         *Richard         Mills*
Richard Mills
United States District Judge